Good morning, I am Jerry Watley, and I represent Mr. Hoverstein. And for what is probably a first for me, Mr. Hoverstein is with us today. What's your argument? The reason that we're here, and I know you've read the briefs, but the reason we're here is because back in 1993, a district attorney's investigator or the prosecutor's attorney made a decision to go for the third time to interview this eyewitness Toxemore to see about whether she could identify Fox, the U.S. Navy. And that describes maybe what happened, but the reality is that after she testified, she initiated contact, saying that she was troubled, that she had given incorrect testimony based upon her perceptions of the defendant as she walked down from the stand past him. So it isn't exactly correct that they initiated or made a decision to contact her. She asked, she told him she was troubled. HOVERSTEIN It's the manner in which they contacted her. I don't quarrel with them contacting her or responding to her inquiry to the victim witness coordinator out in the hallway. I do quarrel with the fact that this trained investigator and or his supervisor decided we will not show her another photo array. We're going to go show her a photograph of the defendant taken a few days after the robbery, which could have had no effect other than to drive into this witness's mind the indelible impression that police believe that they're showing me a photograph of the man who committed the robbery. And indeed it was a photograph of Mr. Hoverstein. KAGAN All of which, of course, was brought out during her second appearance. HOVERSTEIN That's correct. KAGAN That she had misgivings and she realized that the color of her hair had changed and that explains her initial inability to have identified the defendant in person and how it all came down, she explained. So in light of all that, the key question is not whether what you or I would have done with that, but rather whether the California Court of Appeals made an unreasonable application of Simmons and Manson in concluding that it was reasonably reliable. HOVERSTEIN What the California Court of Appeals had to say about that is very interesting, I believe. KAGAN Well, it doesn't matter what they said. Their decision is what matters. And they upheld it. HOVERSTEIN Even if their decision is, excuse me, I should say that. It seems to me that in reading their opinion, they never considered the facts other than one single fact. KAGAN Well, what we have to review is what their decision was and whether the decision is an unreasonable application of Supreme Court law, whether or not they discussed Supreme Court law. So even if the Court of Appeals was wrong in saying as long as it's not per se unconstitutional, it is proper, we have to go further than that to see if they had approached the case correctly and looked at all the facts and circumstances to see if it was a reliable identification the second time she testified. Well, if we do approach it from that view, was it a reliable identification the second time she was on the witness stand in front of the jury? Here's a woman who initially gave a description shortly after the robbery of a man in his late 20s. Mr. Hoverstein was in his late 30s, almost 40 years old when this happened. Here's a woman who was shown twice the six photo array, which included Mr. Hoverstein, and twice said, well, number one and number two look similar. Well, Mr. Hoverstein was number two. And here's a woman who went to the trial the first time she testified and presumably sitting within as close to Mr. Hoverstein as you and I are here together and said, he's not in this courtroom. The robber is not in this courtroom. I respectfully say, without any, I suppose, qualifications, that all those circumstances, which the court feels never considering which this court apparently is going to consider, makes that later identification of a one photograph and her later in court identification after being basically told by Hanley, the investigator, this is the picture of the robber, an unreliable later identification testimony before the jury. And it was so critical here. One of the things that I didn't put into the briefs until I got to the reply brief is that the jury during the deliberations asked for certain witnesses' testimony to be read back to them. The last witness' testimony that they heard was Costamoria. And they came back with a verdict within five minutes after they heard her second version of her testimony. So not only was it not reliable evidence, it was evidence that was unreliable and was also prejudicial and was a denial to Mr. Hoverstein of his rights. What do you do with the California Court of Appeals decision, which we also measure by the same very deferential standard of review, that in any event, any error in allowing Costamoria to testify was harmless by any standard? Both the Mirandas identified at Hoverstein and Vert saw him speeding away near the scene of the robbery. Hoverstein owned the type and color of car used to leave the scene of the crime and admitted possession of the type of gun used in the robbery. There is no reasonable doubt the result would have been the same had Costamoria not made the in-court identification. You have to also demonstrate that that's an unreasonable application of federal law, contrary to federal laws determined by the Supreme Court. I would say that it's an unreasonable determination based upon an unreasonable interpretation of the facts. Well, what did Miranda do with both the Mirandas? Did they identify your client? They did. And what about Vert? He also did. And what about owning the car? So you've got three other identifications. Yes, you do. And you also have Mr. Ron Hilberg. Mr. Hilberg is the only witness who gave a positive identification of the defendant because he identified the personalized plate, a coma. And he put that plate on Highway 101 going toward Atascadero either at the time the robbery was happening or shortly after the robbery happened. The other witnesses were all eyewitnesses to the person's facial features. And everyone in this room knows that that is subject to a lot of frailties. Well, as you see, there you go again, to coin a phrase. I mean, the Court of Appeals looked at this, and they reviewed all the other evidence of identification, all these other people, and concluded that it was harmless beyond any doubt at all. Now, you have to somehow convince us that that determination is contrary to or an unreasonable application of clearly established federal law. Why is that so contrary to or an unreasonable application that we ought to take notice of it? Because it's true, as you admit, all these people identified your client. I thought, Your Honor, when I walked into this room today, if this Court could be persuaded that the Court of Appeals' decision was based upon an unreasonable determination of facts rather than an unreasonable application of the federal law. And that's the prong I'm – if, in fact, that is the law, that's what I'm arguing. Well, I'm talking about the harmless determination now, and all these witnesses who identified your client besides Kastenmeier. What's the deficiency in that? Well, that's basically saying the evidence was sufficient because you had eyewitnesses. But it's not taking into account what Mr. Hilberg said, who established, frankly, a very strong alibi that he – You're asking us to cut underneath that to a different level, though. It appears on its face that they're talking about witnesses who identified your client in addition to cars and guns and all the rest. You have to convince us that that's an unreasonable application of federal law. I think they're – I think what they're saying there is that the evidence is sufficient without her testimony. And I don't think that should be the test. I think the test should be if you excluded her testimony, if they hadn't heard it, would the jury have reached a different verdict? And I think that they – rather than the evidence, whether it's sufficient or not, whether or not it was harmful to let her testify the second time. Would you like to save the rest of your time to answer? All right. Okay. Thank you, counsel. May it please the Court, Donald DeNicola for the State. I think under the AEVPA, the question isn't whether or not in a de novo review situation the Court may think that the circumstances here weighed in favor of a finding of unreliability as opposed to a finding of reliability. It's whether or not the State Court was objectively unreasonable in its application of Simmons to the facts. And I think there's a firm basis, a firm affirmative basis for the State Court's opinion because Kostenmeier had a clear opportunity to see the victim – to see the perpetrator at the time of the crime. Her attention was drawn to him because she believed he was robbing the bank. She identified him in her own mind in court prior to the challenged confrontation or the challenged meeting with the district attorney investigator because she said when she passed by the defendant in the courtroom, she realized that her testimony had been wrong. There might be other arguments. There might be other parts of the circumstances that might suggest unreliability, but there's a firm basis supporting the State Court's opinion that it was reliable and under the AEVPA that's really all that's required. And the same goes for the harmless error determination. There might be a quibble about whether or not in a contested issue the witness who saw the car on the freeway had it going in the right direction or in the right position, but the fact is that the two other eyewitnesses, the Miranda's saw him and identified him positively in the photo display and in court. The other eyewitness, Burt, identified seeing him in the car and there was circumstantial evidence in the form of the gun and the money found in the wrappers and the fact that the defendant owned the car. That seemed to match the description of everybody. So there was a firm basis for the harmless error analysis too and it's too late in the day now to try to re-argue and re-weigh those inferences. Thank you. Do you have anything you'd like to add in response, Counsel? Well, certainly at the State Court trial, the prosecuting attorney didn't think that calling the witness back a second time was just some unimportant thing. He didn't say to himself, I have enough evidence already, I'm going to call her back. But Burt's testimony was critical to the prosecution's case and that's why they called her back. Well, you know, both Mirandas gave the police descriptions of your client. Both identified his picture from the sixth photo display. Both positively identified him in court as the robber. The Mirandas had seen the robber flee in a station wagon, much like the one it turned out that he possessed during the time in question. Burt identified your client as the man he saw speeding away while being pursued by Kastenmeier's car. Hilbert is mentioned here. Haberstein had a gun similar to the one used. He was excited when he showed up at his appointment and he possessed currency bundled by denominations in a manner similar to that employed by the bank that had been robbed. That's not enough to support the State Court's view that it was harmless. The evidence was sufficient, Your Honor. I never continued that it wasn't sufficient. I'm continuing that the impact of her second testimony was such that had it not been there, the jury would not have convicted. Because this is a case where the prosecution tried to prove a man sped to visit his children or to rob a bank. If you look at an aerial map of Atascadero, Highway 101 goes right through the middle of it and over on the east side is the bank. Half a mile away on the west side is where his children were waiting to be picked up at 9 o'clock in the morning. He got to the bank, excuse me, he got to his children a few minutes late, about 20 minutes late, shortly after the robbery. The prosecution tried and did persuade the jury that Mr. Hoverson first ran to the bank or drove to the bank, robbed it, drove across the freeway, picked up his children, and then fled. That's rather incredible, I believe. And the jury did, in fact, have a difficult time with this case. So I think this Court needs to assess the impact of her second testimony upon that jury, not upon whether the evidence is sufficient or not. And I think it did have a harmful effect, and this conviction should be set aside. Thank you, Counsel. This case is ordered and submitted.
judges: Trott, Rymer, Thomas